**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| PHYLLIS INDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-00525-JD |
| | ) | |
| STATE FARM FIRE & CASUALTY COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant State Farm Fire and Casualty Company's ("State Farm") Motion to Exclude Certain Testimony of Plaintiff's Expert, R. Sean Wiley ("Motion") [Doc. No. 57]. Plaintiff Phyllis Inda filed a Brief in Opposition. [Doc. No. 67]. State Farm filed a Reply. [Doc. No. 74].

For the reasons stated below, the Court DENIES the Motion.

## I. BACKGROUND

This case arises from an insurance dispute following tornado damage sustained by a property in Shawnee, Oklahoma. [Doc. No. 1-1 ¶ 2]. Phyllis Inda, the owner, filed a claim with State Farm. [*Id.* ¶ 5]. The parties disagreed on issues of both coverage and valuation, resulting in this litigation. The parties have retained competing experts, and

now State Farm asks the Court to exclude parts of proposed testimony from one of Inda's experts, Sean Wiley.

## II. <u>LEGAL STANDARDS</u>

District courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997). A district court also has broad discretion to decide "how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire*. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 n.1 (10th Cir. 2011) ("If expert testimony is not reliable under *Daubert/Kumho*, it is not admissible under Rule 702[.]").

### A. Amended Federal Rule of Evidence 702

Rule 702 imposes upon the trial judge an important gatekeeping function regarding the admissibility of expert opinions. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 was amended in two ways on December 1, 2023. First, the rule was amended to clarify and emphasize that the proponent of expert testimony must meet all of Rule 702's substantive standards for admissibility by a preponderance of the evidence. *See* Fed. R. Evid. 702 advisory committee's note to 2023 amendments. Second, subsection (d) was amended "to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.*

The 2023 amendments are intended to correct some courts' prior and inaccurate application of Rule 702. As reflected in the advisory committee's note, "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility," which is an "incorrect application of Rules 702 and 104(a)." *Id.* As such, "[t]he Committee concluded that emphasizing the preponderance standard . . . was made necessary by the courts that have failed to apply correctly the reliability requirements of [Rule 702]." *Id.*

"Nothing in the amendment imposes any new, specific procedures." *Id.* It simply "clarifies that the preponderance standard [in Rule 104(a)] applies to the three reliability-based requirements[.]" *Id.* Moreover, the "Rule 104(a) standard does not require

perfection" or courts "to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support." *Id.* At the same time, the Rule 104(a) standard "does not permit the expert to make claims that are unsupported by the expert's basis and methodology." *Id.*

**B. Two-Step Analysis: Expert Qualification and Reliability**

In considering whether an expert opinion is admissible, the Court performs a two-step analysis. First, the Court determines "whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render [the] opinion." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006) (quoting Fed. R. Evid. 702). If so qualified, the Court must then determine whether the expert's opinion is reliable under the principles set forth in *Daubert* and *Kumho Tire*, and relevant, in that it will assist the trier of fact. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc); *103 Investors I, L.P.*, 470 F.3d at 990; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122–23 (10th Cir. 2006); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001).

The Supreme Court in *Daubert* listed four non-exhaustive factors that a trial court may consider in making its reliability assessment: (1) whether the expert's technique or theory can be and has been tested; (2) whether the theory has been subjected to peer review or publication; (3) whether the technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory has been generally accepted in the relevant scientific community. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999) (citing *Daubert v. Merrell Dow Pharms.,*

*Inc.*, 509 U.S. 579, 592–94 (1993)); *103 Investors I, L.P.*, 470 F.3d at 990 (same). "The *Daubert* factors are 'meant to be helpful, not definitive,' and not all of the factors will be pertinent in every case." *United States v. Baines*, 573 F.3d 979, 992 (10th Cir. 2009) (quoting *Kumho Tire*, 526 U.S. at 150–51). Thus, in some cases, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150 (citation modified). The inquiry is necessarily always, and highly fact-specific, and no one factor is outcome-determinative.[1] Finally, when the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *Nacchio*, 555 F.3d at 1241.

## III. ANALYSIS

State Farm's Motion initially appears to challenge only the reliability of Wiley's testimony on interior structural damage, saying he fails to adequately describe his methodology. [Doc. No. 57 at 8–10].[2] But then, despite its heading titles, State Farm

[1] The Advisory Committee Notes to Rule 702 identify other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by a jury. These factors include: (1) whether the expert proposes to testify about matters growing naturally and directly out of his research, independent of the litigation, or whether he has developed his opinion expressly for the purpose of testifying; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the expert has adequately accounted for obvious alternative explanations; (4) whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting; and (5) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

[2] The Court uses page numbering from the CM/ECF stamp at the top of the filing on the district court docket.

makes a passing allegation that Wiley is also unqualified to render an opinion on interior structural damage because he lacks an engineering degree. *Id.* at 11. State Farm further urges that Wiley's testimony lacks objectivity and that the content of his testimony would be unduly prejudicial to State Farm. *Id.* at 11–13.

On their face, Wiley's report and deposition testimony do not evince improper advocacy, and the Court will not further consider that as a ground for exclusion.[3] *See generally* [Doc. No. 57-1] (Wiley's Rule 26 Expert Report). And challenges to admissibility based on the prejudicial impact of testimony are the province of Federal Rule of Evidence 403—such a challenge is not properly before the Court outside of a pre-trial motion in limine. *See* [Doc. No. 57 at 12].

**A. Wiley is qualified to give expert testimony on interior damage.**

State Farm argues Wiley is unqualified to testify on the cause of interior damage because he isn't an engineer. *Id.* at 11. But as Inda rightly points out, neither is State Farm's interior damage expert Derek Van Dorn. [Doc. No. 67 at 13]. State Farm "has no issue retaining and designating" a non-engineer regarding the cause of interior damage at Inda's property, yet it purports to have a problem with Inda doing the same. *Id.* The Court is not convinced by State Farm's argument that Wiley is unqualified.

[3] Evidence of bias is not a proper basis for exclusion of expert testimony. It is the jury's role to assess any potential bias and the impact of any bias on the weight to give Mr. Wiley's testimony. *See United States v. McCluskey*, 954 F. Supp. 2d 1224, 1241 (D.N.M. 2013) (citing *Cruz-Vazquez v. Mennonite Gen. Hosp., Inc.*, 613 F.3d 54, 59 (1st Cir. 2010)).

Mr. Wiley has ample credentials. True, Wiley lacks a high school diploma, much less an engineering degree. Wiley Dep. at 72:9–11 [Doc. No. 67-2]. That is no barrier to expertise: Wiley's thirty-five years of experience in construction and insurance adjusting have rendered him qualified to testify and serve as an expert in myriad cases. [Doc. No. 57-1 at 1–3] (listing cases); [Doc. No. 67 at 14] (citing cases allowing Wiley's testimony). Numerous insurance companies have hired Wiley because of that experience, tasking him with ascertaining the cause and extent of damage to a given building. [Doc. No. 57-1 at 4]. Federal Rule of Evidence 702 states that an expert may be qualified by "knowledge, skill, experience, [and] training" and not only by formal "education." Fed. R. Evid. 702. Accordingly, Inda has established that Wiley is qualified.

**B. Wiley's testimony is reliable.**

State Farm challenges the reliability of Wiley's interior damage opinions on several grounds. First, State Farm contends that Wiley's report fails to explain any methodology for determining that interior structural damage was caused by the April 2023 tornado, offering only his observation that he "saw relatively fresh cracks and breaks" throughout the home. [Doc. No. 57 at 4–5, 10–11]. Second, State Farm argues that Wiley failed to consider and exclude alternative causes for the interior damage as required under *Daubert*. *Id.* at 9.

Inda responds that Wiley articulated a reliable methodology in his deposition testimony. According to Inda, Mr. Wiley employs a two-step approach: he first assesses whether damage is recent by examining cracks for debris, cobwebs, and similar indicators of age and then evaluates causation by looking for signs that would indicate settling

rather than storm damage—including chipped foundation corners, stairstep cracking patterns, and cracks concentrated at corners and weak points. [Doc. No. 67 at 7]; Wiley Dep. at 91:4–93:25, 104:15–105:25 [Doc. No. 67-2]. Inda also asserts that Wiley *did* consider and eliminate alternative causes, even attributing some damage to non-storm causes. [Doc. No. 67 at 8]; Wiley Dep. at 123:14–124:4 [Doc. No. 67-2]. And finally, Inda observes that State Farm's expert Mr. Van Dorn uses a similar experience-based methodology and that Van Dorn acknowledges adjusters routinely assess interior damage causation without the assistance of a structural engineer. [Doc. No. 67 at 19]; Van Dorn Dep. at 67:10–68:3 [Doc. No. 67-3].

State Farm replies that Mr. Wiley's deposition testimony on horizontal cracks coming from storm damage because settling cracks appear only at corners is a "leap of logic" that cannot be tested against the *Daubert* factors. [Doc. No. 74 at 4].

Wiley's opinions as to the cause of the interior structural damage are based on sufficient information and methodologies to make them reliable. While State Farm harps on scientific methodologies, the Supreme Court has made clear that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire*, 526 U.S. at 150. This is because "there are many different kinds of experts, and many different kinds of expertise." *Id.*

Wiley's written report may be sparse in explaining his interior damage assessment methodology. But his deposition testimony reveals a coherent approach: Wiley examines cracks for indicators of recency, then applies a differential diagnosis by checking for hallmarks of settling—corner cracks, stairstep patterns, foundation chipping—and

attributes remaining fresh damage to the proximate storm event when those indicators are absent. Wiley Dep. at 91:4–93:25, 104:15–105:25 [Doc. No. 67-2]. As Van Dorn himself affirms, such an experiential approach is reliable even without the assistance of a structural engineer. Van Dorn Dep. at 67:10–68:3 [Doc. No. 67-3].

Admittedly, Van Dorn provided a more fulsome explanation of his application of this experienced-based methodology:

> From my experience when you have tornado damage where you see it, it's usually at the ceilings where there has been uplift on the roof or it's at exterior walls specifically where they intersect with an interior wall. If you think of a room . . . it's a box with . . . four walls, you know, each of those walls is a diaphragm and that lateral force from the tornado is at the exterior wall so you would expect to find damage mostly focused at where that exterior wall and interior wall intersect or along the exterior wall and we didn't see much [interior cracking] in this house in terms of cracking and the plaster.

Van Dorn Dep. at 53:16–54:4 [Doc. No. 74-1].

But Van Dorn's reliable application of a methodology does not make Wiley's application of the same methodology *unreliable*. When asked how Wiley "make[s] that leap from whether or not [he] believe[s]" damage "was storm-related," Wiley pointed to the patterns he has picked up from "thousands of houses" he has "inspected after tornados." Wiley Dep. at 92:16–19 [Doc. No. 67-2]. Van Dorn made similar statements. Van Dorn Dep. at 52:10–12 [Doc. No. 74-1]. Wiley's statement was not *ipse dixit*, as he went on to explain:

> [W]hen you start looking at [these houses], you start seeing things like . . . . [t]his window seal underneath the window[] [that] has moved out and pulled out. It doesn't do that naturally. That doesn't naturally happen with any type of settling. So that means there was some movement in this house . . . .

Wiley Dep. at 92:19–25 [Doc. No. 67-2]. Wiley added that some of the patterns he has learned to recognize come from past training with structural engineers. *Id.* at 92:7–14. Myriad past insurers have hired Wiley to apply his training and observational methodology to inform them of both the cause and amount of damage to a given structure. [Doc. No. 57-1 at 4].

Wiley has his explanation; Van Dorn has his. Neither are structural engineers. And both reliably apply legitimate methodologies for purposes of admissibility under Federal Rule of Evidence 702(d). Past that threshold, the fact that one expert's application appears *more* detailed and articulate than another's is a question of weight for the jury and that may be the subject of voir dire and cross-examination at trial.

In sum, the gatekeeping inquiry mandated by *Daubert* is one "tied to the facts of a particular case," *Kumho Tire*, 526 U.S. at 150 (citation modified), and the facts of this case make clear that Wiley's application of an experiential and observational methodology is sufficient to avoid "the exception" that is "the rejection of expert testimony." Fed. R. Evid. 702, advisory committee notes to the 2000 amendments.

**C. Wiley's testimony will assist the jury.**

Finally, State Farm makes a half-hearted argument on the helpfulness of Wiley's testimony to the finder of fact. It recites standard caselaw on the subject, followed by the conclusory statement that Wiley's "[r]eport and testimony regarding structural damage

will only serve to confuse the jury" because "Mr. Wiley is not a structural engineer." [Doc. No. 57 at 12].

This re-hashes the same argument made regarding Wiley's qualifications, which the Court need not repeat. The existence of storm-caused structural damage is a topic "not within the realm of ordinary experience," and it is thus a matter appropriate for expert testimony. *Strubhart v. Perry Mem'l Hosp. Tr. Auth.*, 1995 OK 10, ¶ 33, 903 P.2d 263, 274. State Farm believes that similarly qualified testimony from Van Dorn *will* meaningfully assist the jury as it regards the cause of interior damage to Inda's home. If State Farm believes Van Dorn's testimony is more helpful than Wiley's, State Farm will have ample opportunity to show as much at trial.

## IV. CONCLUSION

For these reasons, the Court DENIES Defendant State Farm's Motion to Exclude Certain Testimony of Plaintiff's Expert, R. Sean Wiley. [Doc. No. 57].

IT IS SO ORDERED this 31st day of March 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE