**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| PHYLLIS INDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-00525-JD |
| | ) | |
| STATE FARM FIRE & CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant State Farm Fire and Casualty Company's ("State Farm") Motion to Exclude The Testimony and Report of Plaintiff's Expert, Doug Heady ("Motion") [Doc. No. 55]. Plaintiff Phyllis Inda filed a Response [Doc. No. 69]. State Farm filed a Reply [Doc. No. 73].

For the reasons stated below, the Court DENIES the Motion.

## I. BACKGROUND

The Court incorporates by reference the Background section of its Order on Defendant's Motion to Exclude Certain Testimony of Plaintiff's Expert, R. Sean Wiley. *See* [Doc. No. 78 at 1–2]. In addition to the expert addressed in that Order, Plaintiff has retained Doug Heady as a forensic meteorologist. Heady was retained to opine on weather conditions at the subject property on April 19, 2023, including the path, severity,

and wind speeds of the EF-2 tornado that struck the area surrounding Plaintiff's home. *See* [Doc. No. 69 at 5–6].[1]

## II. LEGAL STANDARDS

The Court incorporates by reference the Legal Standards section of its Order on Defendant's Motion to Exclude Certain Testimony of Plaintiff's Expert, R. Sean Wiley. *See* [Doc. No. 78 at 2–5].

## III. ANALYSIS

The Motion does not challenge Heady's qualifications or the reliability of his testimony. Rather, State Farm centers its challenge on the helpfulness of Heady's testimony to the trier of fact. [Doc. No. 55 at 6]. It further argues that Heady's testimony is prejudicial by being cumulative and that it wrongly serves to bolster credibility of other expert witnesses. *Id.* at 9–10. But then, in reply, State Farm makes what appears to be a reliability argument, contending that Heady "does not have the knowledge to allow him" to refute State Farm's wind speed allegations because his methodology is "not based upon radar data below 1,100 feet above the ground." [Doc. No. 73 at 3]. The Court proceeds to analyze (1) the reliability of Heady's testimony, (2) whether Heady's testimony will assist the jury, and (3) whether Heady's testimony is prejudicially cumulative or focused on bolstering the credibility of other expert witnesses.

---

[1] The Court uses page numbering from the CM/ECF stamp at the top of the filing on the district court docket.

**A. Heady's testimony is reliable.**

State Farm challenges the reliability of Heady's methodology but does so largely in the abstract. The Motion devotes substantial space to reciting the *Daubert* framework and general principles governing expert reliability but offers little by way of a specific methodological challenge to Heady's work. *See* [Doc. No. 55 at 5–9] (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)); *see also* [Doc. No. 69 at 16 n.4].

Heady's methodology is sound. He analyzed radar data from the April 19, 2023 storm event, examining every minute of radar scans both horizontally and vertically. Heady Dep. at 42:16–22 [Doc. No. 69-7]. He then cross-referenced that radar data with National Weather Service ("NWS") storm survey data and Storm Prediction Center data. *Id.* at 42:23–43:3. Heady applied his decades of professional meteorological experience to synthesize those data sources and determine the weather conditions at Inda's property. *Id.* at 18:4–11, 27:14–24, 54:10–22; *see* [Doc. No. 69 at 16]. The relevant inquiry under *Kumho Tire Co. v. Carmichael* is whether the expert employs "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." 526 U.S. 137, 152 (1999). Heady's approach—synthesizing radar analysis with ground-truth survey data and professional experience—satisfies that standard. An expert's methodology need not be "generally accepted" or "indisputably correct"; it must only be "scientifically sound." *Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801, 809–10 (10th Cir. 2016) (unpublished).

State Farm's reply brief narrows to one core contention: because Heady's radar data was captured at approximately 1,100 feet above ground level and because his

information about conditions below that altitude came from an NWS ground survey that may not have observed Plaintiff's specific home, Heady has no "actual knowledge" of wind conditions at the property and his testimony amounts to speculation. [Doc. No. 73 at 3–4].

This argument speaks to the weight of Heady's testimony, not the admissibility. If forensic meteorologists cannot synthesize multiple data sources to estimate conditions at specific locations, it would be difficult to conceive what they *can* do as expert witnesses. Heady did not claim that his radar data directly measured conditions at ground level. He synthesized radar readings with NWS ground survey data that tracked the tornado's path through the area. The fact that any single data source has inherent limitations does not render the overall synthesis unreliable—it provides material for cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). If a radar instrument's inability to directly measure below a certain altitude is disqualifying, virtually no forensic meteorological testimony about specific ground-level conditions could satisfy *Daubert*.

**B. Heady's testimony will assist the jury.**

State Farm argues that Heady's testimony will not assist the jury because "State Farm has already conceded that a tornado occurred and Plaintiff's home sustained damage." [Doc. No. 55 at 2, 11]. The Court disagrees.

The scope of State Farm's concession is considerably narrower than State Farm suggests. State Farm admits that a tornado "occurred" in the vicinity and that the property

"may have" sustained damage. *Id.* at 2. It does not concede that Plaintiff's property was in the direct path of the tornado or that winds at the property reached between 110 and 120 mph. [Doc. No. 55-1 at 3, 23]. These are contested issues, and they are precisely the issues Heady addresses.

The gap between State Farm's characterization of the weather event and the actual conditions is central to this case. State Farm's claim file characterized the April 19, 2023 storm as a "wind event" with winds of 24–53 mph, relying on Accuweather data. [Doc. No. 69-1 at 2]. Heady's analysis concludes that an EF-2 tornado with wind speeds of 110–120 mph struck the area of Plaintiff's property. [Doc. No. 55-1 at 3]. The discrepancy between these two characterizations—24–53 mph versus 110–120 mph—is directly relevant to both the breach-of-contract and bad-faith claims. A jury will need to understand the actual weather conditions to evaluate whether State Farm's investigation and coverage determination were reasonable.

Expert testimony is "helpful" under Rule 702 if it concerns an issue outside the common knowledge of a prospective juror. *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1137 (10th Cir. 2014). Tornado path analysis, wind velocity estimation from radar data, and the meteorological conditions at a specific location during a severe weather event are plainly beyond the competence of a lay juror. And doubts about whether expert testimony will be helpful should be resolved in favor of admissibility. *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994).

State Farm's Reply also argues that wind speed is legally irrelevant to this case because coverage does not depend on wind speed. [Doc. No. 73 at 2–3]. This argument

undermines the Motion. If wind speed is truly irrelevant to coverage, then Heady's testimony about wind speed cannot be prejudicial to State Farm. More importantly, wind speed is relevant to the extent and causation of damage—which is contested—and to the bad-faith claim, which turns in part on whether State Farm's characterization of the storm as a 24–53 mph "wind event" reflected a reasonable investigation.

**C. Heady's testimony is not cumulative or unduly prejudicial.**

State Farm argues that Heady's testimony is cumulative because State Farm has admitted that a tornado occurred. [Doc. No. 55 at 10]. But no other witness or evidence in the record establishes the specific findings that Heady provides, including the following: the tornado's path relative to the property, the wind speeds at the property, the directionality and duration of tornadic activity, or the discrepancy between the actual conditions and the AccuWeather data upon which State Farm relied. Heady is the only meteorological expert retained by either party. A partial concession that a tornado "occurred" and "may have caused damage" does not render expert testimony on the precise meteorological facts cumulative. [Doc. No. 55 at 2, 11]. An admission that something "may have" happened is not the same as proof of how it happened or its extent. *Id.* at 2.

To the extent State Farm argues that Heady's testimony improperly "bolsters" the opinions of Plaintiff's other experts, the Court is unpersuaded. Expert testimony that provides a factual foundation for another expert's opinions is standard practice, not improper bolstering. Heady's meteorological findings provide the weather-event context

within which the damage experts operate. This is permissible reliance under Federal Rule of Evidence 703 and standard practice in weather-damage litigation.

Finally, to the extent State Farm raises Rule 403 concerns, that is a trial management issue for State Farm to raise in a motion in limine, not a *Daubert* motion.

## IV. CONCLUSION

For these reasons, the Court DENIES Defendant State Farm's Motion to Exclude the Testimony and Report of Plaintiff's Expert Doug Heady [Doc. No. 55].

IT IS SO ORDERED this 31st day of March 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE