**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| PHYLLIS INDA,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-24-00525-JD |

**ORDER**

Before the Court is Defendant State Farm Fire and Casualty Company's ("State Farm") Motion to Exclude the Testimony and Report of Plaintiff's Expert, Chris R. Branstetter ("Motion") [Doc. No. 56]. Plaintiff Phyllis Inda filed a Brief in Opposition. [Doc. No. 68]. State Farm filed a Reply. [Doc. No. 72].

For the reasons explained below, the Court DENIES the Motion.

## I. BACKGROUND

This case arises from an insurance dispute following tornado damage to Inda's property in Shawnee, Oklahoma. [Doc. No. 1-1 ¶ 3]. As relevant here, Inda retained Chris R. Branstetter as an expert on specialty slate roofing to evaluate storm damage to her slate roofs and opine on proper repair methods and industry standards. Branstetter Rule 26 Report at 3–4 [Doc. No. 68-1].[1] State Farm now asks the Court to exclude Branstetter's report and testimony.

[1] The Court uses page numbering from the CM/ECF stamp at the top of the filing on the district court docket.

## II. LEGAL STANDARDS

The legal standards governing the admissibility of expert testimony under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), are set forth in the Court's order on State Farm's Motion to Exclude Certain Testimony of Plaintiff's Expert, R. Sean Wiley and are incorporated herein by reference. *See* [Doc. No. 78 at 2–5]. The Court applies those same standards to the present Motion.

## III. ANALYSIS

State Farm's motion challenges Branstetter's testimony on several grounds: (1) his opinions lack methodology, [Doc. No. 56 at 7–11]; (2) the timeline of his report suggests he adopted Mr. Wiley's opinions without review, *id.* at 11; (3) his report impermissibly bolsters Wiley's opinions, *id.* at 11–14; and (4) Branstetter is a biased advocate for Inda, *id.* at 14.

As a threshold matter, the Court disposes of the bias argument. As the Court noted in the order on State Farm's Motion to Exclude Certain Testimony of Plaintiff's Expert, R. Sean Wiley, evidence of potential bias is not a proper basis for exclusion of expert testimony; it is the jury's role to assess bias and the weight to give the testimony. *See United States v. McCluskey*, 954 F. Supp. 2d 1224, 1241 (D.N.M. 2013) (citing *Cruz-Vazquez v. Mennonite Gen. Hosp., Inc.*, 613 F.3d 54, 59 (1st Cir. 2010)); [Doc. No. 78 at 6 n.3]. That Branstetter may receive a commission from Reclaimed Roofs, or that he has

worked primarily for plaintiffs in recent years, are matters for cross-examination, not exclusion.[2] Branstetter Dep. at 84:3–8, 139:18–25 [Doc. No. 56-2].

The Court also notes at the outset that Branstetter is qualified to give expert testimony. State Farm makes no argument to the contrary apart from a brief statement that Branstetter is merely "a roofer" whose experience is insufficient to serve as a methodology for his opinions. [Doc. No. 56 at 5]. Federal Rule of Evidence 702 permits qualification "by knowledge, skill, experience, training, or education." Branstetter has conducted approximately 1,000 roof inspections over approximately thirty-three years in the specialty roofing trade, with a primary focus on tile and natural slate. [Doc. No. 56-1 at 2–3]. He is qualified.

The Court turns to the questions of whether Branstetter's testimony is reliable and helpful to the trier of fact.

**A. Branstetter's testimony is reliable.**

State Farm raises two principal challenges to the reliability of Branstetter's opinions: (1) that his report lacks methodology beyond experience, and (2) that the timeline of his report is inconsistent with Wiley's, suggesting falsification. [Doc. No. 56 at 7–11]. The Court addresses each in turn.

***1. Methodology***

State Farm argues that Branstetter's report "fails to explain any methodology used in determining his opinions, other than stating he has thirty-three (33) years of experience

---

[2] State Farm does not argue Branstetter's potential receipt of a commission is part of his compensation for serving as an expert witness.

in the roofing industry." [Doc. No. 56 at 9]. State Farm notes that "[e]xperience alone does not satisfy the *Daubert* standard" because "'methodology is the process by which the expert relates his experience to the facts at hand . . . .'" *Id.* (quoting *Dean v. Thermwood Corp.*, No. 10-cv-433-CVE-PJC, 2012 WL 90442, at *7 (N.D. Okla. Jan. 11, 2012)). Inda responds that Branstetter's experience-based approach is precisely the kind of testimony permitted under *Kumho Tire*, and that his report and deposition testimony together reveal a methodology grounded in decades of observing storm-damaged slate roofs. [Doc. No. 68 at 9–12].

The Court agrees with Inda. As this Court recognized in the order on State Farm's Motion to Exclude Certain Testimony of Plaintiff's Expert, R. Sean Wiley, the Supreme Court has made clear that at times "the relevant reliability concerns may focus upon personal knowledge or experience" because "there are many different kinds of experts, and many different kinds of expertise." *Kumho Tire*, 526 U.S. at 150. Branstetter's report explains that the damage he observed is "consistent with what [he] observed over the past decades of both wind and hail damage to slate roofs," including damage patterns he identifies as "wind chatter"—a term used in the specialty slate industry to describe wind uplift forces causing a rapid back-and-forth chatter, chipping the slate materials. [Doc. No. 56-1 at 8]. He further explains his repair-versus-replacement analysis, taking into account (1) the number of nail holes created by removing damaged slates, (2) the repair difficulty factor from manipulation of surrounding slates, and (3) the need to replace the supporting "decking" material. *Id.* at 8–9. Based on these factors, Branstetter opines that spot repair is inconsistent with industry standards and that full removal and replacement

is warranted. *Id.* His deposition testimony elaborates on these points, explaining when repair is feasible and when the scope of damage reaches a tipping point at which a full detach-and-reset is the only proper course. Branstetter Dep. at 164:25–165:15 [Doc. No. 56-2]. Branstetter further explains, in great detail, why the use of too many spot repairs can compromise the roof's structural integrity. *Id.* at 163:12–164:22.

These opinions are not ipse dixit. Branstetter identifies the factual conditions he observed, connects them to patterns he has recognized over many years and many inspections, and explains why those conditions warrant full replacement rather than spot repair. Branstetter's methodology is experience-based, but it is grounded in objective, articulable criteria. That State Farm's expert may apply a different analysis or reach a different conclusion is a question of weight for the jury, not admissibility for the Court.

***2. Timeline***

State Farm's second reliability argument concerns the date of Branstetter's report compared with the date of Wiley's report. Branstetter's report is dated January 21, 2025, yet it states that Wiley's estimates "are accurate and consistent with industry standards." [Doc. No. 56-1 at 1, 8]. State Farm points out that Wiley did not inspect the property until January 24, 2025, and did not finalize his report until January 29, 2025, making it "impossible" for Branstetter to have reviewed a completed Wiley report before finalizing his own report. [Doc. No. 56 at 11]; [Doc. No. 72 at 2–3].

Inda responds that Wiley's estimate was a work in progress that began in October 2024, and that Branstetter reviewed working versions of the estimate before his report was finalized. [Doc. No. 68 at 17]. The record supports this explanation. Wiley testified

that the Xactimate "date entered" for the estimate was October 3, 2024, and that Branstetter provided him with scope-of-work information on January 12, 2025. Wiley Dep. at 44:12–46:10 [Doc. No. 68-6]. Wiley considered the estimate "complete" when he sent it to Branstetter, who responded that the estimate was "solid" on January 23, 2025. *Id.* at 47:9–12.

There is some imprecision in this timeline—Branstetter himself testified that he had "no idea" exactly when he received Wiley's estimate. Branstetter Dep. at 168:25–169:2 [Doc. No. 68-2]. And the date of Branstetter's Rule 26 report predates that of Wiley's stated date of completion for the estimate that Branstetter's report says is accurate. *Compare* [Doc. No. 56-1 at 1] ("January 21, 2025"), *with* [Doc. No. 68-6 at 44:12–47:12] ("January 23, 2025"). This is a discrepancy but not one that, on its own, warrants exclusion. The main thrust of the evidence shows the two experts working collaboratively over a period of months, with Branstetter providing scope-of-work information that Wiley incorporated into his estimate and Branstetter reviewing the estimate as it developed. Inconsistencies in dates may be the subject of cross-examination, but not grounds for exclusion under Rule 702. Branstetter's testimony is sufficiently reliable to be presented to a trier of fact.

**B. Branstetter's testimony will assist the trier of fact.**

State Farm contends Branstetter's testimony will not assist the trier of fact because it merely vouches for Wiley's credibility. [Doc. No. 56 at 11–14].[3] This is

[3] The repair of storm-damaged slate roofing systems is not within the realm of ordinary experience, nor does State Farm argue that it is.

unpersuasive. In his report, Mr. Branstetter states that his recommended plan of action "can be achieved through the estimates prepared by Sean Wiley" and that Wiley's estimates "are accurate and consistent with industry standards." [Doc. No. 56-1 at 8, 11]. And in a deposition response to questions from State Farm, Branstetter said Wiley "is very good as an estimate writer" and "very competent." Branstetter Dep. at 168:2–15 [Doc. No. 68-2].

Neither statement is inappropriate vouching. The statements reflect corroboration and verification, not vouching for truthfulness. Moreover, the cases State Farm cites on vouching all pertain to vouching for the truthfulness of fact witnesses, not expert witnesses. *See, e.g.*, *United States v. Samara*, 643 F.2d 701, 705 (10th Cir. 1981) (expert accountant could not attack the credibility of a fact witness based on "felony convictions and lack of documentation"); *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (expert witness could not testify to the credibility of the child witnesses in the case).

The proximate explanation is much simpler. Branstetter, like Wiley, is familiar with the costs associated with replacing and repairing slate roofs. [Doc. No. 68-1 at 3] (qualifications including "[e]stimating repair and replacement cost for specialty and vintage tile projects"). But unlike Wiley, Branstetter was unable to place those costs into the estimate software known as "Xactimate," frequently used in insurance and construction contexts. Branstetter Dep. at 166:16–24 [Doc. No. 68-2]. For that skill, Branstetter relied on Wiley. As to the numbers themselves, Branstetter reviewed and

verified Wiley's estimate, as he was qualified to do. *Id.* at 168:2–15. That is corroboration on a matter of mutual expertise, not vouching for credibility.[4]

## IV. CONCLUSION

For these reasons, the Court denies State Farm's Motion to Exclude the Testimony and Report of Plaintiff's Expert, Chris R. Branstetter. [Doc. No. 56].

IT IS SO ORDERED this 31st day of March 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

[4] Although it recites rules on the subject, State Farm does not make a distinct argument that Branstetter's testimony will fail to assist the trier of fact for being cumulative. *See* [Doc. No. 56 at 12–13]. Even if it did, Branstetter's testimony is not merely duplicative of Wiley's. Branstetter is a slate specialist, while Wiley is a general construction management and estimating expert. That their conclusions overlap does not make Branstetter's testimony inadmissible. If State Farm believes specific elements of Branstetter's testimony will be cumulative, it may raise that issue at trial or in limine under Federal Rule of Evidence 403.